UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

DEPARTMENT OF FAIR EMPLOYMENT AND HOUSING,

Plaintiff,

v.

SILICON VALLEY GROWTH SYNDICATE I, L.L.C., et al.,

Defendants.

Case No. 19-cv-04204-RS

**ORDER GRANTING MOTIONS FOR LEAVE TO INTERVENE AND TO PROCEED UNDER A PSUEDONYM AND DENYING MOTIONS TO TRANSFER AND TO DISMISS**

This action is brought by the California Department of Fair Employment and Housing against several individuals and entities who are alleged to have been responsible for the employment of "Jane Doe," when she purportedly suffered sexual harassment from her direct supervisor, individual defendant William McNutt. Doe moves for leave to intervene and to proceed anonymously; both those motions will be granted. Defendants' motion to transfer venue to the Southern District of California will be denied. Defendants' motions to dismiss for lack of personal jurisdiction, and to dismiss the second claim for relief as inadequately pleaded, will similarly be denied.

The Defendants

Defendant Silicon Valley Growth Syndicate I, L.L.C. ("the Syndicate LLC") is the general partner of defendant Silicon Valley Growth Syndicate Fund I, L.P. ("the Syndicate Fund"). These defendants are referred to by the parties collectively as "the Syndicate." The Syndicate operates a

venture capital fund. Many of its investments have been in start-up companies based in California.

Both the Syndicate LLC and the Syndicate Fund are Delaware entities. They were initially headquartered in Menlo Park, California, and later in San Francisco. Defendants insist the Syndicate is a small operation that has never had any employees and that its funds were fully invested by February of 2016. Defendants assert the Syndicate has been run from Arkansas since mid-August of 2018, and that it has no remaining presence in California.

Defendant William Bunker is a one of the founders of the Syndicate. Plaintiff alleges Bunker resided in California from approximately 2005 until late 2018 or early 2019. Bunker declares he was a part time resident of California prior to August of 2018, when he moved permanently to Arkansas, the location from which he manages the business of the Syndicate now.

Defendant Russell Lewis is another founder of the Syndicate. Plaintiff alleges he resided in Rancho Santa Fe, California, at the time of the events described in the complaint. Lewis offered a declaration at the time of removal indicating he has lived in Nevada since 2013. Lewis has not been served in this action, and is not a party to the current motions.

Defendant Lee William McNutt is the third cofounder of the Syndicate. There is no dispute that he has been a resident of Texas at all relevant times. As noted above, he is the individual who is alleged to have harassed Doe.

Finally, Defendant International Direct Mail Consultants, Inc. ("IDMC") is a Texas company owned by McNutt. Plaintiff alleges IDMC was Doe's "joint employer," together with the Syndicate.

The Allegations

According to the operative First Amended Complaint, around the time Doe was completing college, McNutt approached her at children's soccer games and began offering her various forms of work, including babysitting, dog sitting, and modeling. Eventually, McNutt offered Doe an internship with the Syndicate. From there, Doe was offered the position of Chief of Operations, by "the Syndicate partners." Doe's job duties included: "publicity and social media

presence for Silicon Valley Growth Syndicate; network and relationship-building for potential investments for Silicon Valley Growth Syndicate; communication with Silicon Valley Growth Syndicate's Fund One investors regularly; email account, LinkedIn account, and Angel List account management; and entertainment for guests, customers, investors, prospective investors, business partners and others related to Silicon Valley Growth Syndicate."

Plaintiff contends that soon after starting work with the Syndicate, Doe "realized where she fit into the business model for the investment group." Plaintiff alleges Doe "was required to travel with male partners, attend dinners and other networking events such as cocktail parties and happy hours wearing a dress and high heels, visit beaches and pools wearing bathing suits, and flatter them and other men associated with the group."

In the course of her work, Doe was asked to give McNutt massages. Doe eventually discovered that McNutt possessed and shared secret photos of her and other young women taken without their consent. On one occasion, unbeknownst to Doe, McNutt sent a bikini photo of her via text message to a man in California who said she was "hot." The man promptly offered to "fly her out to CA." When Doe did not respond to the man in California, McNutt invited him to a conference in New Orleans, Louisiana, and said he would bring Doe as an incentive for the other man to attend.

In late August of 2017, Doe traveled to La Jolla, California as part of her work. McNutt invited Doe to go to the Del Mar Racetrack to watch the horse races. While in the track restaurant, McNutt reached under the table to hand Doe money to bet on the horse races. McNutt pushed the money between Doe's thighs.

During the trip McNutt took Doe to a beach, without advising her in advance that it was a nude beach. McNutt repeatedly asked Doe to drink alcohol. He took multiple walks on the beach, during which he removed his bathing suit and walked within her field of vision.

McNutt reserved a two-bedroom Airbnb apartment as accommodations for himself and Doe on the trip. When they arrived at the apartment, McNutt told Doe to put on shorts. After she changed, he asked her to lie down so he could give her a massage. He placed his hands under her

CASE NO. 19-cv-04204-RS

3

shorts, and massaged her buttocks, placing his fingers close to her genitals. The touching was unwanted and made Doe feel afraid and unsafe. She was afraid he would become aggressive. McNutt then stated it was his turn, removed his shirt, and poured oil on his back. Doe went to her room, locked the door, and pushed the night table in front of the door.

Further incidents outside California took place in subsequent months. Around March of 2018, counsel for Doe sent a demand and document preservation notice to McNutt, outlining various alleged violations of California, Florida, and Texas law. Counsel suggested Doe be placed on paid leave until the identified issues were resolved. Around June 1, 2018, McNutt informed Doe that her contract would not be renewed.

Motion to Change Venue

Defendants seeks a venue transfer under 28 U.S.C. § 1404(a), contending that litigation of this matter will be more convenient in the Southern District of California, the district in which the alleged acts of harassment within California took place.[1] Section 1404(a) provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented."

If the action could have been brought in the proposed transferee district, *Hoffman v. Blaski*, 363 U.S. 335, 343–44 (1960), courts then weigh a variety of factors including: (1) where the relevant agreements were negotiated and executed, (2) which state is most familiar with governing

---

[1] Although their motion also invokes Rule 12(b)(3) (dismissal for *improper* venue), defendants acknowledge that their removal of the case rendered venue proper in this district, even assuming it would not have been a proper venue in the first instance, or that San Francisco Superior Court was an improper venue. *See* 28 U.S.C. §1441(a) (removal proper "to the district court of the United States for the district and division embracing the place where such action is pending."); *Abordo v. Corr. Corp. of Am.*, 2011 WL 2604702, at *1 (D. Haw. June 30, 2011) ("removal constitutes a waiver of any venue objection"). It seems likely that, contrary to defendants' arguments, venue would have been proper here apart from the removal given defendants' prior headquarters in the Bay Area. That question is not presented, however. Venue undeniably is proper here, and the only issue is whether a discretionary transfer for convenience should be granted.

CASE NO. 19-cv-04204-RS

4

law, (3) the plaintiff's choice of forum, (4) the parties' contacts with each forum, (5) the parties' contacts with each forum that are related to the cause of action, (6) the relative costs of litigating in each forum, (7) the availability of compulsory process in each forum, and (8) access to evidence in each forum. *See Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498–99 (9th Cir. 2000). Whether to transfer is generally left to the discretion of the district court. *See Ventress v. Japan Airlines*, 486 F.3d 1111, 1118 (9th Cir. 2007); *Commodity Futures Trading Comm'n v. Savage*, 611 F.2d 270, 279 (9th Cir. 1979) ("Weighing of the factors for and against transfer involves subtle considerations and is best left to the discretion of the trial judge.").

Defendants' transfer motion is premised on twin assertions that (1) this action has *no* connection to Northern California beyond plaintiff DFEH's presence here, and (2) to the extent the action has any connection to California at all, the Southern District is a better venue because the allegedly wrongful acts within California all took place there and the only California-based witnesses live in that district. In advancing the first point, defendants overlook the fact that the Syndicate, Doe's alleged employer, was based in Menlo Park or San Francisco at the time of the alleged California misconduct and during much of the other alleged misconduct. Plaintiff also carried out its investigation from the Bay Area. Plaintiff's choice to sue here does not appear arbitrary, and there is nothing to support an inference of any forum shopping. Accordingly, plaintiffs' choice of forum is entitled to significant deference.

Conversely, defendants' identification of certain potential witnesses who reside in the Southern District does not weigh heavily in favor of transfer, because defendants have not made a showing that any of them have particularly important evidence to offer. While at least some of their testimony may be sufficiently relevant to be admissible, the fact that one or more of them *might* be called to testify at trial is not enough to shift the balance to make transfer appropriate. This suit involves alleged employer defendants who were operating in the Bay Area during much of the relevant time period. The Bay Area has a sufficient interest in the action that plaintiff's choice of forum should not be disturbed, under all the circumstances. The motion to change venue is denied.

Motion to Dismiss for Lack of Personal Jurisdiction

(a) *McNutt*

McNutt has formally withdrawn from defendants' motion challenging the exercise of personal jurisdiction over them.

(b) *The Syndicate*

The Syndicate relies on the fact that it *no longer* has a presence in California. Defendants admit, however, that the Syndicate was still headquartered here when Doe travelled to California and allegedly was subjected to harassment by McNutt in this state.

The Syndicate was also located here during some of the other alleged acts of harassment that occurred outside of this state. Defendants appear to be arguing that the Syndicate's presence in California during either the in-state or out-of-state harassment is irrelevant because the Syndicate was not Doe's employer, and that she is merely confused to the extent she believed otherwise.

Although the precise legal relationship between Doe and the Syndicate cannot be conclusively determined at this time, the complaint seeks to impose liability on the basis that Doe was allegedly performing services on behalf of, and for the benefit of, the Syndicate. Additionally, while defendants insist Doe and McNutt undertook the trip to California primarily for other business pursuits, even defendants concede it included a short meeting involving the Syndicate.

The fact that the Syndicate based its business operations in California during much of the time period of the alleged wrongdoing quite possibly would support *general* jurisdiction. If, however, its subsequent departure from the forum precludes the court from exercising general jurisdiction now, those same contacts are adequate to support specific jurisdiction, as plaintiff is alleging claims that all grew out of work Doe allegedly was performing for the Syndicate.[2]

---

[2] Defendants insist jurisdiction must be analyzed here under the *Calder* "effects test." *See Calder v. Jones*, 465 U.S. 783, 104 S.Ct. 1482 (1984). That test ordinarily applies in tort cases where a

(c) *Bunker*

The complaint seeks to impose liability on Bunker in his role as a principal of the Syndicate. He was a California resident during the same time that the Syndicate was based here. For the same reasons, therefore, he is subject to at least personal jurisdiction in this action.

(d) *IDMC*

There is no real dispute that IDMC, at least, was Doe's employer. Although defendants insist the California trip by Doe and McNutt included purposes outside the business of IDMC (or of the Syndicate), the record adequately supports a conclusion that Doe came to California at the behest of IDMC in her capacity as its employee, and suffered the alleged harassment at the hand of its owner, her boss, McNutt. That is sufficient to support personal jurisdiction.

---

defendant's out-of-state conduct is "expressly aimed at the forum state" and causes "harm that the defendant knows is likely to be suffered in the forum state." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 803 (9th Cir. 2004). Relying on *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199 (9th Cir. 2006), defendants contend that *Calder* also applies to conduct taking place *within* the forum state, because the *Yahoo!* opinion describes the test as focusing "on the forum in which the defendant's actions were felt, *whether or not* the actions themselves occurred within the forum." *Id.* at 1206 (emphasis added). *Yahoo!* itself involved conduct outside the forum, however, as do nearly all cases applying the effects test. It appears the emphasized language in *Yahoo!* was only intended to convey that jurisdiction may be found under the effects test *even though* the conduct took place outside the forum. Where the tortious conduct takes place *in* the forum, the jurisdictional analysis generally is not complex. *See*, *Martensen v. Koch,* 942 F. Supp. 2d 983, 994 (N.D. Cal. 2013) ("Instead, the "effects" test appears unnecessary where, as here, part of the alleged tort occurred in California."); *MMCA Group, Ltd. v. Hewlett–Packard Co.*, 2007 WL 1342586 at *7 (N.D. Cal. 2007) ("When a nonresident defendant commits a tort within the state . . . that tortious conduct amounts to sufficient minimum contacts with the state by the defendant to constitutionally permit courts within that state ... to exercise personal adjudicative jurisdiction . . . ."). Moreover, defendants argue the effects test cannot be satisfied here because Doe is not a forum resident, so supposedly the wrongdoing could not have been "aimed" at this state nor been expected to cause harm here. That is simply incorrect with respect to the alleged acts of harassment against Doe that purportedly took place within California.

Motion to Dismiss Second Claim for Relief

Defendants contend the Second Claim for Relief fails to state a claim. The claim invokes California Civil Code §51.9 which extends liability for sexual harassment to a variety of contexts outside of employment relationships. The statute generally applies where "There is a business, service, or professional relationship between the plaintiff and defendant." The statute provides a non-exclusive list of numerous specific examples of such relationships. By amendment effective in 2019, the list was expanded to list "investors" as a category of persons potentially liable for harassment.

For reasons that are unclear, the complaint here references "investors," even though there is no suggestion that the relationship between Doe and any of the defendants involved defendants acting in the role of "investors." Defendants argue the claim fails because "investors" was not added to the statute until after the alleged events took place.

The parties' dispute as to possible retroactivity of the amendment is beside the point. The complaint does not plead facts that would support defendants' liability as "investors." The complaint's use of that term, however, is superfluous, and does not undermine the claim. The gravamen of the allegations is that there was a business relationship between Doe and defendants, which is potentially sufficient to implicate the statute, even if defendants do not fall into the specific example of "investors."

Defendants also challenge the claim by arguing the facts as pleaded are all directed at showing Doe was in an *employment* relationship with defendants, and that therefore §51.9 is inapplicable. Defendants acknowledge pleading in the alternative is permissible. Although it may be true that the complaint does not spell out exactly what kind of "business relationship" existed other than an employment relationship, in light of the fact that defendants themselves appear to be denying that the relationship rose to the level of an employment contract between Doe and all of the defendants, the reliance on §51.9 as a potentially applicable alternative basis of liability is appropriate, and is adequately pleaded. That plaintiff has largely characterized the facts it has alleged as giving rise to an *employment* relationship does not preclude some of those same facts

from potentially supporting a "business relationship" within the meaning of §51.9, should the claim of employment fail, particularly with respect to defendants other than IDMC and McNutt.

Finally, defendants argue that Bunker should be dismissed from the claim in any event, as he allegedly had no contact with Doe at all. While the claim may be particularly tenuous as to Bunker, it is not appropriate for disposition at the pleading stage. The motion to dismiss the second claim for relief is denied.

Motion for Leave to Intervene

Good cause appearing, Doe's motion for leave to intervene is granted. The parties will be expected to cooperate to ensure that the matter is litigated efficiently, without undue duplication that might impose an unfair burden on defendants. Defendants' suggestion that more specific limitations be imposed as conditions on intervention is not warranted.

Motion for Leave to Proceed under Pseudonym

Doe's unopposed motion for leave to proceed under the pseudonym she has been using is granted.

**IT IS SO ORDERED**.

Dated: September 27, 2019

_____
RICHARD SEEBORG
United States District Judge

CASE NO. 19-cv-04204-RS

9