JANETTE WIPPER (#275264)
  Chief Counsel
  Janette.Wipper@dfeh.ca.gov
MELANIE L. PROCTOR (#228971)
  Associate Chief Counsel
  Melanie.Proctor@dfeh.ca.gov
ANDREW S. HUANG (#193730)
  Associate Chief Counsel
  Andrew.Huang@dfeh.ca.gov
MARTHA L. GOMEZ (#274024)
  Senior Staff Counsel
  Martha.Gomez@dfeh.ca.gov
DEPARTMENT OF FAIR EMPLOYMENT
  AND HOUSING
2218 Kausen Drive #100
Elk Grove, CA 95758
Telephone:  (916) 478-7251
Facsimile:   (888) 382-5293

Attorneys for Plaintiff,
Department of Fair Employment and Housing
(No Fee Pursuant to Gov. Code, § 6103)

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| DEPARTMENT OF FAIR EMPLOYMENT AND HOUSING, an agency of the State of California,<br><br>Plaintiff,<br><br>vs.<br><br>SILICON VALLEY GROWTH SYNDICATE I, L.L.C., et al.<br><br>Defendants.<br><br>JANE DOE,<br><br>Plaintiff-Intervenor. | Case No.: 19-cv-04204-RS<br><br>**PLAINTIFF DEPARTMENT OF FAIR EMPLOYMENT AND HOUSING'S MOTION TO ENFORCE SETTLEMENT**<br><br>Date:   May 7, 2020<br>Time:  1:30 p.m.<br>Judge: Hon. Richard Seeborg<br>Ctrm:   3, 17th Floor |

## I. INTRODUCTION

California has enacted broad protections against sexual harassment in a multitude of settings, designed to deter sexual harassers in nearly every conceivable interaction. These statutes include Civil Code § 51.9, enacted in 1994, to "supplement statutes that forbid workplace harassment with a provision applicable to 'professional relationships.'" *Rohm v. Homer*, 367 F. Supp. 2d 1278, 1287 (N.D. Cal. 2005). The law essentially aims "to plug a hole in the civil rights law" to prevent evasion of California's broad anti-harassment protections. (*Ibid*.) This action exemplifies the need for the statute.

In 2018, Jane Doe filed an administrative complaint with the Department of Fair Employment and Housing ("DFEH"), in which she alleged that Lee William McNutt subjected her to visual, verbal, and physical sexual harassment while she was under contract to perform services for the named defendants in this civil rights action. Following an investigation and an unsuccessful mediation, the DFEH filed a state court civil rights action on Doe's behalf, which Defendants removed to this Court.

On February 18, 2020, the parties participated in a settlement conference with Magistrate Judge Robert M. Illman. The settlement conference successfully concluded with an agreement and the parties entered essential terms on the record. Despite this settlement agreement, Defendants now refuse to enter the agreed-upon consent decree. Accordingly, the DFEH moves to enforce the settlement.[1]

## II. FACTS

Real Party in Interest Jane Doe ("Doe") attended Southern Methodist University in Dallas, Texas, from 2013 to 2017. (First Amended Complaint ["FAC], Dkt. 19, ¶ 45.) She babysat for several families in the area. (*Ibid.*) Between October 2015 and September 2016, defendant William Lee McNutt ("McNutt") approached Doe at children's soccer games and offered her various forms of work, including babysitting his children, dog sitting, and modeling. (*Ibid.*) At the time, McNutt was in his early 60s and Doe was barely an adult. (*Id.*, ¶ 6.)

McNutt eventually offered Doe an internship with the "Silicon Valley Growth Syndicate." (*Id.*, ¶ 45.) Although her contract was nominally with defendant International Direct Mail Consultants, Inc.

---

[1] The DFEH acknowledges the current public health crisis, but believes that given Defendants' past conduct, delaying this motion would jeopardize the interests of justice. (See *infra*, pp. 3-4; Declaration of Melanie Proctor ["Proctor Decl. I"], ¶¶ 5-11.) Moreover, Defendants have not cited public health issues as the reason for their non-compliance with the settlement agreement. (*Id.*, ¶¶ 8, 11.)

("IDMC"), Doe provided labor and services for the Silicon Valley Growth Syndicate ("the Syndicate"). (*Id.*, ¶¶ 46-48.) While in the employment of IDMC and performing work on behalf of the Syndicate, Doe discovered that McNutt had taken pictures of her without her permission. (*Id.*, ¶ 55.) She also discovered numerous photographs of other young women that appeared to be taken without permission. (*Ibid.*) Doe later discovered that McNutt had sent a revealing photo and video of her to another man and discussed whether the other man should bring Doe to California. (*Id.*, ¶ 59.)

More than once, McNutt subjected Doe to unwanted sexual touching and comments. (*Id.*, ¶¶ 54, 58, 63.) Doe's employment contract required her to travel. (*Id.*, ¶ 53.) Pursuant to her responsibilities for the Syndicate, in August 2017, Doe traveled to La Jolla, California for an investor meeting. (*Id.*, ¶¶ 62.) While in La Jolla, McNutt again subjected Doe to harassing behavior, including pushing money between her thighs, taking her to a nude beach, and massaging her buttocks. (*Id.*, ¶¶ 63-68.) Doe subsequently filed an administrative complaint with the DFEH, alleging that while in California, McNutt sexually harassed her. (*Id.*, ¶ 10.)

The DFEH investigated the complaint pursuant to its statutory power to receive, investigate, conciliate, mediate, and prosecute complaints alleging sexual harassment. The DFEH may investigate broadly, similar to a grand jury, and its investigations "can therefore be initiated 'merely on suspicion that the law is being violated, or even just because it [the department] wants assurance that it [the law] is not [being violated]." *DFEH v. Superior Court*, 99 Cal. App. 4th 896, 901 (Cal. Ct. App. 2002) (alterations in original, citations omitted). Much more than mere suspicion existed here. Under its statutory mandate, the DFEH determined that defendants violated the Fair Employment and Housing Act ("FEHA") and Civil Code § 51.9. (FAC, Dkt. 19, ¶¶ 29-32.) Following unsuccessful mediation, the DFEH filed a civil complaint in the Superior Court for San Francisco County, where the Syndicate principally operated, and the Defendants subsequently removed the proceedings to federal court based on diversity. (Notice of Removal, Dkt. 1.) The DFEH then filed its FAC. (FAC, Dkt. 19.)

McNutt's conduct towards Doe followed his previously established pattern of behavior. The FAC alleges that McNutt was previously a partner with a Texas-based investment group. (*Id.*, ¶ 37.) While McNutt was with that group, the president sent him an email admonishing him to not have any further involvement with any employees outside the office. (*Ibid.*) Defendant William Bunker

-2-

*Dept. Fair Empl. & Hous. v. Silicon Valley Growth Syndicate I, L.L.C., et al.* (Doe)– Case No. 19-cv-04204-RS
DFEH's MOTION TO ENFORCE SETTLEMENT

("Bunker") was an investor with that investment group. (*Id.*, ¶ 38) The complaint also alleges that in 2010, the Dallas Morning News reported that two years prior, Southern Methodist University barred McNutt from campus after several students complained about him. (*Id.*, ¶ 39.) Regardless, in 2010, campus police arrested McNutt for trespassing. (*Ibid.*) The newspaper reported that students described dinner parties where they were pressured to undress in a mirrored room for a massage. (*Id.*, ¶ 40.) One student alleged that McNutt followed her to her car and tried to kiss her. (*Ibid.*)

Just two years later, defendants Bunker, McNutt, and Russell Lewis ("Lewis") formed the Silicon Valley Growth Fund I, L.P. ("the Fund"). (*Id.*, ¶ 41.) The Fund filed a Form D with the Securities and Exchange Commission. Bunker, Lewis, and McNutt listed their address as 1370 Willow Road, Menlo Park, California 94025. In 2013, Bunker, Lewis, and McNutt formed the Silicon Valley Growth Syndicate I, L.L.C. ("the Syndicate LLC").[2] (*Id.*, ¶ 42.) Since the entities' formation, defendants have invested tens of millions of dollars in local start-up businesses in California: as of 2017, forty-two of their investments were in California-based businesses. (*Id.*, ¶ 2.) Nearly sixty percent to those businesses were in the Silicon Valley. (*Ibid.*) By the conclusion of the DFEH's investigation, both the Fund and the Syndicate LLC were based in San Francisco, California. (*Id.*, ¶¶ 13-14.)

### III.  PROCEDURAL HISTORY

When Defendants removed this action from state court, each individual defendant supported the removal with a declaration. (Dkt. 1-4 [McNutt], 1-5 [Bunker], 1-6 [Lewis].) After removal, Defendants moved to dismiss the action for lack of personal jurisdiction, improper venue, and for failure to state a claim. (Dkt. 29, 30.) All Defendants were represented by David Monks of Fisher Phillips. (*Ibid.*) In opposition to Defendants' motions to dismiss for lack of personal jurisdiction and venue, the DFEH submitted evidence that contradicted Lewis's and Bunker's claims that they lacked ties to California. (Dkt. 42-1, Declaration of Melanie Proctor in Opposition to Rule 12(b)(2) and 12(b)(3) Motions ["Proctor Decl. II"], ¶¶ 14-24.) To rebut Defendants' claim that the Syndicate had left California before

---

[2] For ease of reference, this brief will refer to the Fund and the Syndicate LLC collectively as "the Syndicate."

-3-

*Dept. Fair Empl. & Hous. v. Silicon Valley Growth Syndicate I, L.L.C., et al. (Doe)*– Case No. 19-cv-04204-RS
DFEH's MOTION TO ENFORCE SETTLEMENT

the action was filed, the DFEH submitted the Syndicate's listed address from its website (as of March 12, 2019), and its March and June 2019 cancellations of registration to do business in California. (*Id.*, ¶¶ 8, 10, 17.) In reply, Bunker claimed in a declaration that his father's death had delayed him from updating the Syndicate's address on its website. (Dkt. 47-2.) Because Bunker had earlier represented that he departed California in August 2018 (Dkt. 1-5, ¶ 4), the DFEH submitted evidence that as of October 2018, Bunker represented in his father's obituary that he resided in San Francisco. (Dkt. 50.) The Court denied Defendants' motions. (Dkt. 51.)

Because Lewis had thus far evaded service, the DFEH moved to serve Lewis by publication. (Dkt. 52.) The parties eventually resolved the motion through stipulation. (Dkt. 66, 68.) In the stipulation, it was agreed that David Monks and Fisher Phillips represented Lewis. (Dkt. 66, ¶ 2-3.)

On December 3, 2019, the parties attended a settlement conference scheduling call with Magistrate Judge Robert M. Illman. (Proctor Decl. I, ¶ 2, Exh. 1.) Defendants were collectively represented on the call by Mr. Monks. (*Id.*, at 3:15-16.) Plaintiff-Intervenor Jane Doe was the only party excused from attending the settlement conference in person. (*Id.*, p. 6:22-7:13; Dkt. 75.)

In advance of the scheduled settlement conference, the DFEH submitted a mediation brief to the Court, which set forth the monetary and injunctive relief sought by the DFEH.[3] (*Id.*, ¶ 3, Exh. 2.) The DFEH relayed these same terms to Defendants in a joint demand letter. (*Id.*, Exh. 2, p. 9 and Exh. C; *id.*, ¶¶ 3, 4.) In a written response and during the settlement conference, Defendants indicated the injunctive relief terms were largely acceptable. (*Id.*, ¶ 5.) Defendants also represented that McNutt had full settlement authority for all defendants, including the Fund and the Syndicate LLC. (*Id.*, ¶ 5.)

---

[3] Because the DFEH action seeks relief under only state law, the state mediation privilege controls. Fed. R. Evid. 501; *Wilcox v. Arpaio*, 753 F.3d 872, 876 (9th Cir. 2014); *Agster v. Maricopa County*, 422 F.3d 836, 839 (9th Cir. 2005). With the substantive amendments in 1974, the Advisory Committee on Rules of Evidence wrote "in diversity cases where the litigation in question turns on a substantive question of State law, and is brought in the Federal courts because the parties reside in different States, the committee believes *it is clear that State rules of privilege should apply* unless the proof is directed at a claim or defense for which Federal law supplies the rule of decision (a situation which would not commonly arise.)" Fed. R. Evid. 501 advisory committee's notes. Pursuant to the California mediation privilege, the DFEH waives its mediation privilege under California law. Cal. Evid. Code § 1122(a)(2) (allowing the admission of a mediation communication prepared by fewer than all mediation participants if the participants who prepared the brief consent to the submission). Doe has waived her claim of privilege over the joint demand letter attached as Exhibit C to the DFEH's mediation brief. (Proctor Decl. I, ¶ 4, Exh. 3.)

-4-

*Dept. Fair Empl. & Hous. v. Silicon Valley Growth Syndicate I, L.L.C., et al. (Doe)*– Case No. 19-cv-04204-RS
DFEH's MOTION TO ENFORCE SETTLEMENT

On February 18, 2020, the parties participated in a settlement conference with Magistrate Judge Robert M. Illman. The DFEH, Plaintiff-Intervenor and her counsel, and Defendant William McNutt and Defendants' counsel attended in person. (*Id.*, ¶ 6, Exh. 4.) Following lengthy negotiations, the parties reached an agreement regarding essential terms of a consent decree. (*Ibid.*) Counsel for the DFEH read most of the terms into the record, with counsel for Defendants reading in three terms pertaining to Doe's Texas state court action against McNutt. (*Ibid.*) The essential terms included the following:

1. This matter shall be resolved by a consent decree and permanent injunction to be filed in this court and shall be governed substantively by the laws of California and shall be signed by Plaintiff-Intervener, the Department of Fair Employment and Housing, and Defendants, and shall be in effect for five years. (*Id.*, p. 3:19-25.)

2. A monetary payment by Defendants of $1,800,000, with $1,440,000 being paid to Doe's counsel for distribution and $360,000 paid to the DFEH for attorney fees and costs. (*Id.*, p. 4:1-8.)

3. Defendants shall cease and desist from discriminating against employees, interns, or entrepreneurs because of sex. (*Id.*, p. 4:11-13.)

4. Defendant McNutt shall not videotape or photograph girls and/or women who are not family members. (*Id.*, p. 4:15-21.)

5. Defendant McNutt shall permanently destroy all versions, electronic or printed, photographs and videos of girls and/or women who are not family members that are in his possession, custody or control, including but not limited to all photographs and videos of Plaintiff-Intervenor. (*Id.*, pp. 4:22-5:3.)

6. For a period of five years after the effective date of the consent decree, if Mr. McNutt travels to Richmond, Virginia, he will, via his counsel, inform Doe's counsel of the dates of his travel to Richmond and the location where he will be staying in Richmond. (*Id.*, p. 5:4-9.)

7. Defendant McNutt, either individually or through an agent, including but not limited to an attorney or private investigator, shall permanently cease contact with Plaintiff Intervenor, and all of her family members. Ms. Doe will cease contact with all members of the McNutt family, including spouse, children, and grandchildren. (*Id.*, p. 5:10-22.)

8. Defendant McNutt shall permanently, not knowingly come within 100 yards of Plaintiff Intervenor and all of her family members. (*Id.*, p. 5:23-6:1.)

9. Defendant McNutt shall permanently not disparage Ms. Doe. Ms. Doe shall not disparage Defendant McNutt. However, this provision does not prevent Ms. Doe from complying with a subpoena or government request for information. (*Id.*, p. 6:2-7.)

10. Defendant McNutt shall permanently cease contact with any individual named or indicated in the disclosures, document production, or discovery responses provided or produced in this lawsuit, whether provided by a party or non-party, who has alleged that McNutt harassed or engaged in inappropriate conduct with or towards them, and Defendant McNutt shall permanently not disparage any witnesses named or indicated in the disclosures, document production, or discovery responses provided or produced in this lawsuit, whether by a party or a non-party who alleged McNutt harassed them. (*Id.*, p. 6:8-24.)

11. Defendant McNutt shall permanently not hire or employ for any position, including but not limited to babysitting, house sitting, pet sitting, modeling, internships, part-time employment or full-time employment, whether individually at his residence or through an entity that he owns or controls any undergraduate or graduate student at Southern Methodist University. This provision shall apply to any member of McNutt's household. For example, McNutt shall not escape this clause by attributing hiring decisions to his spouse. (*Id.*, p. 6:25-7:9.)

12. For a period of five years after the effective date of the consent decree, if any of the individual Defendants have a controlling ownership interest in another entity, that entity must have effective antiharassment, anti-discrimination, and anti-retaliation policies in place. Defendants must provide a copy of these policies to the DFEH for review and approval. (*Id.*, p. 7:10-18.)

13. For a period of five years after the effective date of the consent decree, Defendants must advise all employees, interns, volunteers or any other person doing work for them of their rights to complain of any harassment or discrimination under any applicable state or federal law. (*Id.*, p. 7:19-24.)

14. Within 30 days of the effective date of the consent decree, Defendant Silicon Valley Growth Syndicate shall be required at its own expense to ensure that all non-supervisory employees,

-6-

*Dept. Fair Empl. & Hous. v. Silicon Valley Growth Syndicate I, L.L.C., et al. (Doe)* – Case No. 19-cv-04204-RS
DFEH's MOTION TO ENFORCE SETTLEMENT

1   interns or volunteers receive a minimum of 60 minutes of annual in-person training on the prevention
2   of discrimination, retaliation, and sexual harassment in the workplace and all general partners and
3   supervisory employees receive a minimum of two hours of in-person or webinar training on the
4   prevention of discrimination, retaliation, and sexual harassment in the workplace, to take place every
5   two years. Defendant Silicon Valley Growth Syndicate's obligation under this section shall remain in
6   effect for five years from the effective date of this consent decree. (*Id.*, p. 7:25-8:14.)

7         15.    For a period of three years from the effective date of the consent decree, Defendant
8   Silicon Valley Growth Syndicate shall incorporate into all investor meetings training on the prevention
9   of discrimination, retaliation, and sexual harassment in the workplace to be provided by a trainer
10  approved by the DFEH. (*Id.*, p. 8:15-21.)

11        16.    Defendants shall permanently include in all their investment contracts, other than with
12  publicly traded companies, a non-discrimination clause prohibiting all parties from discrimination or
13  harassment on the bases enumerated in California Government Code § 12940 and Title 7 of the Civil
14  Rights Act, 42 U.S.C. § 2000(e). (*Id.*, p. 8:22-9:3.)

15        17.    For a period of five years after the effective date of the consent decree, Defendants shall
16  report all complaints of discrimination or harassment to the DFEH within 10 days of receiving any such
17  complaint. Upon request, Defendants shall provide the DFEH with the results and all related
18  documents, files, including personnel files of all involved personnel, and materials to any investigations
19  conducted in response to the complaint. (*Id.*, p. 9:5-12.)

20        18.    Plaintiff-Intervenor shall release all claims related to her relationships with the
21  Defendants with a waiver of California Code § 1542. (*Id.*, p. 9:19-24.)

22        19.    Plaintiff-Intervenor shall dismiss her Texas state court lawsuit against Defendant
23  McNutt, with prejudice, within ten days of receipt of payment. Each party shall bear their own costs
24  and fees in the Texas case. (*Id.*, p. 9:25-10:7.)

25       Doe and Defendant McNutt each accepted the terms of the agreement. (*Id.*, p. 12:4-15.) The
26  DFEH and Plaintiff-Intervenor sent Defendants a draft consent decree, as agreed to at the settlement
27  conference. (*Id.*, p. 12:8-16; *id.*, ¶ 7, Exh. 5.) The Court ordered the parties to file a stipulation of
28  dismissal no later than April 9, 2020 and set an order to show cause hearing for April 16, 2020.

(Dkt. 90.) However, on March 12, 2020, Mr. Monks, still serving as counsel for all Defendants, informed the DFEH that Defendants Bunker, Lewis, and the Syndicate disputed that they were bound by the terms, and that they refused to sign the consent decree. (Proctor Decl. I, ¶ 8.) Mr. Monks has not responded to further inquiries from the DFEH. (*Id.*, ¶ 11.)

On March 13, 2020, the DFEH received an email from Patrick Stokes of Jackson Lewis, stating that he would substitute as counsel for Bunker, Lewis, and the Syndicate. (*Id.*, ¶ 9, Exh. 6.) He attached to his email a fully executed notice of substitution of counsel. (*Ibid.*) On a phone call the following Monday, Mr. Stokes represented that he could not file the substitution of counsel because signatures were still pending. (*Id.*, ¶ 9.) To date, counsel has not filed the notice. (*Ibid.*)

### IV.  ARGUMENT

Courts in this judicial district have found that they have "the inherent power summarily to enforce a settlement agreement involving an action pending before it." *Brionez v. U.S. Dep't of Agric.*, 2007 WL 217680, at *2 (N.D. Cal. Jan. 26, 2007) (Wilken, J.) (citing *In re Suchy*, 786 F.2d 900, 902-903 (9th Cir. 1985)). As noted by the district court, "[t]he interpretation and enforcement of a settlement agreement is governed by the legal principles applicable to contracts." *Brionez*, 2007 WL 217608, at *2 (citing *United Commercial Ins. Serv. Inc. v. Paymaster Corp.*, 962 F.2d 853, 856 (9th Cir. 1992)). To be enforced, the settlement must meet two requirements: (1) it must be a complete agreement, and (2) the settling parties must have either agreed to the terms of the settlement or authorized their respective counsel to settle the dispute. *Callie v. Near*, 829 F.2d 888, 890 (9th Cir. 1987); *Harrop v. W. Airlines, Inc.*, 550 F.2d 1143, 1144-45 (9th Cir. 1977); *Hamilton v. Willms*, 2007 WL 707518, at *9 (E.D. Cal. Mar. 6, 2007).

State law governs whether the parties have reached a binding contract. *Wilcox*, 753 F.3d at 876. When parties intend that an agreement be binding, the fact that a more formal agreement must be prepared and executed does not alter the validity of the agreement. *Blix St. Records, Inc. v. Cassidy*, 119 Cal. Rptr. 3d 574, 582 (Cal. Ct. App. 2010); see also *EEOC v. Hosp. Housekeeping Sys. of Houston, Inc.*, 2013 WL 5817726, at *3 (E.D. Cal. Oct. 29, 2013). Under California law, "[i]f parties to pending litigation stipulate . . . orally before the court, for settlement of the case, or part thereof, the court, upon motion, may enter judgment pursuant to the terms of the settlement." Cal. Code Civ. Proc.

§ 664.6. The settlement the parties stipulated to orally before the Court is a contract in the State of California. The Ninth Circuit has noted that "[u]nder California law, the intent of the parties determines the meaning of the contract." *United Commercial*, 962 F.2d at 856 (citing Cal. Civ. Code §§ 1636, 1638). The proper inquiry is the parties' objective intent, "that is, the intent manifested in the agreement and by surrounding conduct—rather than the subjective beliefs of the parties." *Id*. Therefore, if a party does not express his or her true intent as to the meaning of a material term of a settlement agreement, that subjective intent is irrelevant. *Id*.

Here, the parties reached a valid agreement at a settlement conference before Judge Illman, and indicated that the terms set forth on the record captured the entirety of the agreement. (Proctor Decl. I, Exh. 4, pp. 11:8-13:5.) The record therefore reflects both the parties' intent to enter into a settlement agreement and the complete terms of that agreement. *Callie*, 829 F.2d at 890 (holding that complete settlement agreements may be enforced); *Harrop*, 550 F.2d at 1144-45 (holding oral agreement may be binding if parties have authorized their attorney to enter settlement); *Ebates Performance Marketing Inc. v. Integral Technologies Inc*., 2013 WL 4427115, at *3 (N.D. Cal. Aug. 15, 2013) (Tigar, J.) (finding oral settlement agreement placed on record before magistrate judge binding without further factual inquiry); *Blix Street Records, Inc*., 119 Cal. Rptr. 3d at 582 (holding oral agreement was enforceable). Defendants thus entered into a binding settlement agreement. Because the terms of the proposed consent decree are entirely consistent with the terms of the agreement stated in open court, Defendants cannot now refuse to execute the consent decree. *Doi v. Halekulani Corp*., 276 F.3d 1131, 1140 (9th Cir. 2002) (holding binding settlement agreement reached in open court enforceable).

After informing the DFEH that the Syndicate, Bunker, and Lewis refused to enter the consent decree, counsel for Defendants McNutt and IDMC ceased communications. (Proctor Decl. I, ¶ 11.) It appears that all Defendants are trying to back out of the agreement. Accordingly, the Court should enforce the clear terms of the complete negotiated settlement. *Facebook, Inc. v. Pacific Northwest Software, Inc*., 640 F.3d 1034, 1039-42 (9th Cir. 2011); *see also Doi*, 276 F.3d at 1138; *Page v. Horel*, 2011 WL 5117562, at *8 (N.D. Cal. Oct. 28, 2011) (Chen, J.) (denying motion to renege on settlement agreement); *Ciampi v. City of Palo Alto*, 2011 WL 4915785, at *4 (N.D. Cal. Oct. 17, 2011) (Koh, J.) (enforcing settlement agreement and ordering that if the parties were "unable to agree to a form of

-9-

*Dept. Fair Empl. & Hous. v. Silicon Valley Growth Syndicate I, L.L.C., et al*. (Doe)– Case No. 19-cv-04204-RS
DFEH's MOTION TO ENFORCE SETTLEMENT

written settlement, then the parties shall sign the transcript" of the settlement conference on the record); *Ambat v. City and County of San Francisco*, 2011 WL 2118576, at *6-9 (N.D. Cal. May 27, 2011) (Illston, J.) (enforcing settlement as to terms entered orally into the record where city attorney represented she had authority on behalf of the city); *Lichtle v. New York Life Ins. Co*., 2008 WL 2543244, at *3 (N.D. Cal. June 20, 2008) (Fogel, J.) (enforcing settlement).

Alternatively, the DFEH requests the Court to schedule an evidentiary hearing to determine whether Defendants Bunker, Lewis, and the Syndicate authorized counsel and McNutt to resolve the case on their behalf. *Harrop*, 550 F.3d at 1145 (remanding the case for district court to determine whether counsel had authority to settle); *Callie*, 829 F.2d at 891 (same).

## V.   CONCLUSION

For the foregoing reasons, the DFEH respectfully requests the Court to vacate the order to show cause hearing scheduled for April 16, 2020, and to enter an order enforcing the settlement agreement as entered on the record. Alternatively, the DFEH requests the Court to issue an order to show cause why it should not enforce the settlement agreement and enter the consent decree terms agreed to at the settlement conference.

Dated: March 20, 2020    DEPARTMENT OF FAIR EMPLOYMENT
                           AND HOUSING

                         /s/Melanie L. Proctor
                         MELANIE L. PROCTOR
                         Associate Chief Counsel
                         Attorneys for the DFEH